No. 26-12027

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————————————

GREG LOVELACE, COMMISSIONER, ALABAMA DEPARTMENT
OF CORRECTIONS, AND TERRY RAYBON, WARDEN, HOLMAN
CORRECTIONAL FACILITY,

*Defendants and Appellants*,

v.

JEFFERY LEE,

*Plaintiff and Appellee*.

———————————————————

On Appeal from the United States District Court
for the Middle District of Alabama
No. 2:25-cv-680-ECM (Hon. Emily Coody Marks)

———————————————————

**PLAINTIFF-APPELLEE'S ANSWERING BRIEF AND
OPPOSITION TO MOTION TO STAY JUDGMENT PENDING APPEAL**

**Capital Case – Execution Scheduled for June 11, 2026**

———————————————————

Paige H. Sharpe
*Counsel of Record*
ARNOLD & PORTER
 KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
T: (202) 942-5000
F: (202) 942-5999
paige.sharpe@arnoldporter.com

Anna K. Thompson
Kevin A. Cline
Jocelyn A. Wiesner
Alejandra C. Uria
anna.thompson@arnoldporter.com
kevin.cline@arnoldporter.com
jocelyn.wiesner@arnoldporter.com
alejandra.uria@arnoldporter.com

*Counsel for Plaintiff-Appellee*

**CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT**

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 and 26.1-2, Plaintiff-Appellee Jeffery Lee hereby submits a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal:

1.      Alabama Department of Corrections – Government agency involved in the underlying proceedings;

2.      American Thoracic Society – Amicus curiae in prior appeal;

3.      Antognini, Joseph F. – Defendants-Appellants' expert witness in the underlying proceedings;

4.      Arnold & Porter Kaye Scholer LLP – Law firm representing Plaintiff-Appellee in the underlying proceedings and on appeal;

5.      Bastarache, Julie A. – Plaintiff-Appellee's expert witness in the underlying proceedings;

6.      Bickler, Philip E. – Plaintiff-Appellee's consulting expert witness in the underlying proceedings;

7.      Bowdre, Alexander Barrett – Defendants-Appellants' counsel in the underlying proceedings and on appeal;

8. Bredar, Thomas – Counsel for amicus curiae American Thoracic Society in prior appeal;

9. Butts, Talmadge – Defendants-Appellants' counsel in the underlying proceedings and on appeal;

10. Ciliberti, Angelique – Plaintiff-Appellee's counsel in the underlying proceedings;

11. Cline, Kevin A. – Plaintiff-Appellee's counsel in the underlying proceedings and on appeal;

12. Hamm, John – Former Commissioner, Alabama Department of Corrections, Defendant-Appellant in the underlying proceedings;

13. Heath, Mark J. – Plaintiff-Appellee's consulting expert witness in the underlying proceedings;

14. Huynh, Tommy – Plaintiff-Appellee's counsel in the underlying proceedings;

15. Jones, R. Stanton – Counsel for amicus curiae Professor John F. Stinneford in prior appeal;

16. Kenny, Polly – Defendants-Appellants' counsel in the underlying proceedings and on appeal;

17. Lee, Jeffery – Plaintiff-Appellee in the underlying proceedings and on appeal;

18. Lovelace, Greg – Commissioner, Alabama Department of Corrections, Defendant-Appellant in the underlying proceedings and on appeal;

19. Marks, Hon. Emily Coody – United States District Judge for the Middle District of Alabama, judge in the underlying proceedings;

20. Marshall, Steve – Alabama Attorney General and Defendants-Appellants' counsel on appeal;

21. Overing, Robert – Defendants-Appellants' counsel in the underlying proceedings and on appeal;

22. Raybon, Terry – Warden, William C. Holman Correctional Facility, Defendant-Appellant in the underlying proceedings and on appeal;

23. Reichman, Dylan S. – Counsel for amicus curiae American Thoracic Society in prior appeal;

24. Schwartzstein, Richard M. – Plaintiff-Appellee's expert witness in the underlying proceedings;

25. Schoenfeld, Alan E. – Counsel for amicus curiae American Thoracic Society in prior appeal;

26. Sharpe, Paige H. – Plaintiff-Appellee's counsel in the underlying proceedings and on appeal;

27. Simpson, Lauren – Defendants-Appellants' counsel in the underlying proceedings and on appeal;

28. Stinneford, John F. – Amicus curiae in prior appeal;

29. Thompson, Anna K. – Plaintiff-Appellee's counsel in the underlying proceedings and on appeal;

30. Thompson, Brenton – Defendants-Appellants' counsel in the underlying proceedings and on appeal;

31. Thompson, Caleb – Plaintiff-Appellee's counsel in the underlying proceedings;

32. Trial Lawyers for Justice – Law firm representing amicus curiae Professor John F. Stinneford in prior appeal;

33. Tutt, Andrew T. – Counsel for amicus curiae Professor John F. Stinneford in prior appeal;

34. Uria, Alejandra C. – Plaintiff-Appellee's counsel on appeal;

35. Vigeland, Sophie – Counsel for amicus curiae American Thoracic Society in prior appeal;

36. Wiesner, Jocelyn A. – Plaintiff-Appellee's counsel in the underlying proceedings and on appeal;

37. Williams, James S. – Plaintiff-Appellee's expert witness in the underlying proceedings; and

38. Wilmer, Cutler, Pickering, Hale & Dorr LLP – Law firm representing amicus curiae American Thoracic Society in prior appeal.

No publicly traded company or corporation has an interest in the outcome of this case or appeal.

/s/ Paige H. Sharpe
Paige H. Sharpe

**TABLE OF CONTENTS**

Page

INTRODUCTION ..................................................................................1

BACKGROUND AND PROCEDURAL HISTORY ...............................2

STANDARD OF REVIEW .....................................................................4

ARGUMENT .........................................................................................5

I. THE DISTRICT COURT DID NOT CLEARLY ERR IN FINDING THAT MR. LEE'S PROPOSED ALTERNATIVE METHOD OF EXECUTION SATISIFIES THE SECOND PRONG OF *GLOSSIP*..............6

    A. The District Court Did Not Clearly Err in Finding that Execution by Firing Squad Causes No Pain ........................................7

    B. The District Court Did Not Clearly Err in Finding that Execution by Firing Squad Is Feasible and Readily Implemented ...................................................................................13

    C. The District Court Did Not Clearly Err in Finding that the State Has No Penological Interest in Refusing Mr. Lee's Proposed Alternative ....................................................................................17

II. DEFENDANTS DO NOT SATISFY THE REQUIREMENTS FOR A STAY OF THE LOWER COURT'S JUDGMENT PENDING APPEAL. .............................................................................................19

CONCLUSION ....................................................................................24

CERTIFICATE OF COMPLIANCE ....................................................26

CERTIFICATE OF SERVICE .............................................................27

# INTRODUCTION

After extensive evidentiary proceedings—including a three-day trial and remand proceedings directed by this Court—the district court concluded that Defendants' use of nitrogen asphyxiation to execute Mr. Lee violates the Eighth Amendment. The district court entered detailed findings of fact and conclusions of law and permanently enjoined Defendants from executing Mr. Lee by nitrogen gas. Defendants now challenge the district court's findings for clear error, and in the alternative, seek the extraordinary relief of staying that permanent injunction. There is no basis to reverse the district court's factual findings, which it made after carefully reviewing the evidence and making credibility findings. This Court should affirm the decision below.

Nor is there any basis for this Court to issue a stay of the judgment. Defendants cannot establish any of the factors—likelihood of success on the merits, irreparable harm to the applicant, injury to other interested parties, and the public interest—to warrant a stay. Indeed, granting a stay of the judgment would effectively allow Defendants to move forward with executing Mr. Lee using an unconstitutional method. After he is executed, this case would be moot, meaning there would be no appellate review. This Court should deny Defendants' request for a stay of the judgment pending appeal.

1

**BACKGROUND AND PROCEDURAL HISTORY**

Just last week, this Court received the parties' extensive briefs and heard oral argument in the related appeal, *Lee v. Lovelace*, No. 26-11864. The Court held that Mr. Lee had met his burden on the first prong of *Glossip*—to show that Alabama's nitrogen asphyxiation protocol "presents as substantial risk of serious harm— reversed the district court's judgment, and remanded for consideration of the firing squad alternative that Mr. Lee proposed. *See* Op. at 4, *Lee v. Comm'r*, No. 26-11864 (June 8, 2026) (Doc. 41-1) (hereinafter, "Op."). In the interest of efficiency, Mr. Lee provides updates to the procedural history below, but does not otherwise repeat the facts of the case. *See* Appellant's Br. at 8–32, *Lee v. Lovelace*, No. 26-11864 (11th Cir. June 1, 2026) (Doc. 20) (providing a "Statement of the Case").

Following remand from this Court, Mr. Lee immediately moved the district court to enter an order to find for him on the second prong of *Glossip*, to enter judgment for him, and to permanently enjoin Defendants from executing him by nitrogen asphyxiation or any other method other than firing squad. DE 185.[1] In the alternative, Mr. Lee moved the district court for a stay of his scheduled June 11–12, 2026 execution. *Id.*

---

[1] Citations to the docket in the district court are designated "DE."

The next day, on June 9, 2026, the district court issued a 26-page opinion concluding that Mr. Lee had satisfied the second prong of *Glossip*: "Lee has shown by a preponderance of the evidence that his proposed firing squad alternative is feasible, readily implemented, and significantly reduces the substantial risk of serious harm posed by the Protocol." DE 187 at 24. The court also concluded that Defendants had no "legitimate penological reason for refusing to adopt Lee's proposed alternative." *Id.* The court supported these conclusions with factual findings, specifically that an inmate executed by Mr. Lee's proposed alternative of firing squad will be rendered "unconscious in three to five seconds . . . before his brain can process any pain," because "of delayed brain processing and neural stunning." *Id.* at 23.

The district court also found that Defendants "can readily obtain rifles, ammunition, and other materials necessary to carry out a firing squad execution," "would be able to modify space at Holman to carry out executions by firing squad, and are "able to source and train volunteers willing to carry out such an execution." *Id.* at 23.

Accordingly, the district court entered judgment in Mr. Lee's favor, permanently enjoined Defendants from executing him by nitrogen asphyxiation, and denied as moot his motion to stay his execution. *Id.* at 2, 25. Later that same day,

3

Defendants moved for a stay of judgment in the district court, which was denied. DE 194.

**STANDARD OF REVIEW**

"On appeal from a bench trial, the district court's conclusions of law are reviewed de novo, but its findings of fact . . . shall not be set aside unless clearly erroneous." *Compulife Software Inc. v. Newman*, 959 F.3d 1288, 1301 (11th Cir. 2020) (alteration in original) (internal quotations and citation omitted). There is clear error if a "review of the record leaves us 'with the definite and firm conviction that a mistake has been committed.'" *U.S. Commodity Futures Trading Comm'n v. S. Tr. Metals, Inc.*, 894 F.3d 1313, 1322 (11th Cir. 2018) (citation omitted).

In deciding whether to stay an injunction pending appeal, courts consider the following factors: (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies. *See Hand v. Scott*, 888 F.3d 1206, 1207 (11th Cir. 2018) (quoting *Nken v. Holder*, 556 U.S. 418, 426 (2009)); *Miller v. Hamm*, No. 2:22-cv-506, 2022 WL 4371904, at *2 (M.D. Ala. Sept. 21, 2022) (recognizing that the standard for granting a preliminary injunction and the standard for granting a stay are "nearly identical").

The party seeking a stay pending appeal bears the burden of showing that all four stay factors justify relief, *see Garcia-Mir v. Meese*, 781 F.2d 1450, 1453 (11th Cir. 1986), but "[t]he first two factors are the 'most critical.'" *Hand*, 888 F.3d at 1207 (quoting *Nken*, 556 U.S. at 434).[2] Moreover, this Court "must always be diffident in interposing the power of an appellate court into the province of the trial court and its orders save upon full briefing and mature reflection by this Court." *Garcia-Mir*, 781 F.2d at 1453.

## ARGUMENT

Defendants have failed to provide any basis to reverse the district court's factual findings. They do not argue that the district court failed to consider the evidence they presented; they simply do not agree with how the district court weighed the evidence and viewed the credibility of witnesses (even Defendants' own witnesses). That disagreement falls far short of establishing clear error. This Court should accept the district court's findings and affirm the decision below.

---

[2] By seeking a stay of the district court's permanent injunction, Defendants are effectively asking this Court to vacate a stay of execution. "The standard under which we consider motions to vacate stays of execution is deferential, and properly so. Only when the lower courts have clearly abused their discretion in granting a stay should we take the extraordinary step of overturning such a decision." *Dugger v. Johnson*, 485 U.S. 945, 947 (1988) (O'Connor, J., dissenting); *accord, Barefoot v. Estelle*, 463 U.S. 880, 896 (1983); *Wainwright v. Spenkelink*, 442 U.S. 901, 905 (1979) (Rehnquist, J., dissenting).

Defendants also fail to satisfy the high burden needed to stay the district court's judgment, which permanently enjoined Defendants from executing Mr. Lee by nitrogen asphyxiation. Defendants cannot satisfy any of the stay factors. And if this Court grants Defendants' extraordinary (and, by all accounts, unprecedented) request, Defendants will proceed to execute Mr. Lee tomorrow using a method that a federal district court just found to be unconstitutional. Once that execution occurs, neither this Court nor the Supreme Court can review Mr. Lee's Eighth Amendment claim. Defendants are therefore asking this Court to suspend the district court's final judgment long enough to render it effectively unreviewable. This Court should deny the Motion.

## I. THE DISTRICT COURT DID NOT CLEARLY ERR IN FINDING THAT MR. LEE'S PROPOSED ALTERNATIVE METHOD OF EXECUTION SATISIFIES THE SECOND PRONG OF *GLOSSIP*.

An Eighth Amendment method-of-execution challenge requires two showings by a preponderance of the evidence. First, the inmate must show that the challenged method presents "a substantial risk of serious harm." *Glossip v. Gross*, 576 U.S. 863, 877 (quotation marks and citation omitted). Second, the inmate must "identify an alternative that is feasible, readily implemented, and in fact significantly reduce[s] a substantial risk of severe pain." *Id.* (quotation marks and citation omitted) (alteration in original); *see also Bucklew v. Precythe*, 587 U.S. 119, 134 (2019) (requiring the inmate to establish "a feasible and readily implemented

6

alternative method of execution that would significantly reduce a substantial risk of severe pain and that the State has refused to adopt [the proposed alternative] without a legitimate penological reason").

This Court previously held that Mr. Lee satisfied *Glossip*'s first prong. *See* Op. at 4, 16, 17, 20. Defendants do not challenge the district court's findings or this Court's legal conclusions in this appeal. On remand, the only question before the district court was whether Mr. Lee proved an alternative method of execution under *Glossip*'s second prong. The district court did not clearly err in reaching its findings of fact on Mr. Lee's proposed alternative of firing squad, and correctly found that he satisfied this burden. This Court should affirm the decision below.

### A. The District Court Did Not Clearly Err in Finding that Execution by Firing Squad Causes No Pain

At trial, Mr. Lee presented overwhelming evidence that execution by firing squad will significantly reduce the substantial risk of severe pain. Dr. James Williams—the only expert on gunshot wounds, ballistics, and firearms to testify at trial—explained that execution by firing squad is very likely to result in rapid loss of consciousness and death with no pain. *See* DE 187 at 4, 12. Based on his review of the "scientific literature, his clinical experience treating gunshot victims in the emergency room, and his own experience being shot," *id.* at 4, Dr. Williams testified that multiple gunshot wounds to the cardiac bundle by high-caliber rifles would render an inmate "deep[ly]" unconscious in three to five seconds. *See id.* at 12–13;

*see also* DE 176 at 10 n.15 ("Dr. Williams testified to a reasonable degree of medical certainty that execution by firing squad . . . causes a quick and painless death."). Defendants did not provide any admissible expert opinion to counter this point.[3]

Dr. Williams also explained that the inmate is not likely to feel pain during these three to five seconds of consciousness. DE 187 at 13–14. Because of both a delay in neural processing and the phenomenon of neural stunning, the brain will not be able to process pain associated with the gunshot wounds before the inmate loses consciousness. *Id*. In other words, the brain—deprived of oxygenated blood within seconds of the shots—simply cannot complete the neural processing required to register pain before consciousness is lost.[4] Defendants, again, made no effort to rebut this opinion.

And Dr. Williams explained that execution by firing squad would significantly reduce—if not eliminate—the psychological suffering that accompanies nitrogen asphyxiation once the gas begins to flow. While any execution method could cause

---

[3] *See* DE 175 at 13 n.7 ("[S]ome of Dr. Antognini's specific opinions were properly excluded at the bench trial. Dr. Antognini conceded on the stand that he had no support for his opinion that an inmate condemned to die by firing squad would be conscious for eight to ten seconds after being shot."). Dr. Antognini himself testified that he is not an expert in firearm usage or ballistics and has never treated somebody who has been shot in the first minute after they have been shot. *See* 4/29/2026 Tr. at 99:23–100:2, 100:9–11 [J. Antognini] (**Exhibit C**).

[4] *See also* 4/28/2026 Tr. at 41:24–42:14 [J. Williams] (**Exhibit B**) (making clear that, in prior cases, he never intended to suggest that an inmate would feel pain in the three to five seconds before loss of consciousness).

some fear or anxiety in the lead-up to the execution, Dr. Williams testified that an inmate being executed by firing squad would not experience anxiety or psychological suffering once the bullets strike the heart.  4/28/2026 Tr. at 44:21–45:6 [J. Williams] (**Exhibit B**); *compare* DE 175 at 13 n.7 (excluding Defendants' expert's opinion that the "emotions experienced by an inmate during the Protocol are the same emotions that the inmate would experience when being executed by any method of execution" (quotation marks and citations omitted)).

Defendants do not dispute Dr. Williams's opinion that execution by firing squad results in unconsciousness within three to five seconds.  Nor do they dispute that the scientific underpinnings of his opinion that an inmate would not feel pain during those few seconds.  Instead, Defendants claim that the district court should not have credited Dr. Williams' opinions because of an alleged conflict of interest: lawyers for the family of Mikal Mahdi—an inmate executed in South Carolina by firing squad—have consulted with Dr. Williams.  *See* Appellants' Br. at 19–21.  But the Mahdi family has not filed a lawsuit, *see* 4/28/2026 Tr. at 84:9–21 [J. Williams] (**Exhibit B**) and, as such, Dr. Williams has not submitted an expert report or testified in that yet-to-be-filed action.  Under Rule 26, Dr. Williams was not required to disclose his consulting relationship to Defendants.  *See* Fed. R. Civ. P. 26(a)(2)(B)(v) (requiring an expert to provide "a list of other cases in which, during the previous 4 years, the witness ***testified as an expert at trial or by deposition***" (emphasis added));

9

*Cedant v. United States*, 75 F.4th 1314, 1325 (11th Cir. 2023) (instructing courts, in interpreting Rule 26, to anchor their analysis "to the text of the Federal Rules," and should not impose disclosure obligations untethered to the Rule's text).[5]

Moreover, Defendants had a full and fair opportunity to explore Dr. Williams' opinions both before and during trial. Defendants could have, but affirmatively chose **not** to depose Dr. Williams in this case. They cannot claim to be surprised by Dr. Williams' consulting relationship with the lawyers representing the Mahdi family when they made no effort to ask him these questions during discovery. Defendants also conducted a thorough cross-examination of Dr. Williams at trial. Other than privileged communications with counsel for the Mahdi family—to which the Court sustained an objection—Dr. Williams answered **all** of Defendants' questions related to the Mahdi execution at trial. Having heard Dr. Williams' testimony, knowing full well about the purported conflict of interest, the district court denied Defendants'

---

[5] Dr. Williams' disagreement with the South Carolina protocol should come as no surprise to Defendants. *See* Appellants' Br. at 23–24 (claiming that "Appellants could not have, in other words, anticipated Dr. Williams's eventual position . . ."). In a prior litigation (involving the same defense counsel) challenging Alabama's nitrogen asphyxiation protocol, Dr. Williams similarly testified that the South Carolina protocol had "significant shortcomings" insofar as it used frangible bullets. Hr'g Tr. at 269:11-270:20, *Boyd v. Hamm*, No. 2:25-cv-00529-ECM (M.D. Ala. Sept. 5, 2025) (ECF No. 83). Moreover, while Defendants challenged Dr. Williams on the grounds that his purported conflict was undisclosed, they did not seek to exclude his specific opinion regarding South Carolina's use of frangible bullets as undisclosed. They cannot do so now.

motion to strike Dr. Williams during the trial and repeatedly found him credible in entering the preliminary injunction for Mr. Lee. *See* 4/29/2026 Tr. 128:8-18 (**Exhibit C**); DE 187 at 5, n.8, 14, 15. That finding should not be disturbed on appeal. *See Childrey v. Bennett*, 997 F.2d 830, 834 (11th Cir. 1993) (explaining that in a bench trial, "it is the exclusive province of the judge . . . to assess the credibility of witnesses and to assign weight to their testimony").

Defendants next claim that the district court erred because it did not sufficiently credit the so-called "botched" Mahdi execution in South Carolina via its firing squad protocol. *See, e.g.*, Appellants' Br. at 24; *see also* DE 187 at 19 n.13 (expressing "no view as to whether Mahdi's execution was 'botched'"). But the district court heard and considered the evidence about the Mahdi execution. *See, e.g.*, DE 187 at 5, 14, 19. Indeed, it devoted at least three pages of its opinion to that execution. *Id.* The court simply did not find the Mahdi execution persuasive in reaching its findings of fact, among other reasons, because Mr. Lee did not propose South Carolina's protocol as his alternative method of execution. *Id.* at 19.[6] That finding is not clearly erroneous.

---

[6] Defendants' expert, Dr. Antognini, notably expressed no opinion about the firing squad protocol of Utah, which Mr. Lee actually proposed as a model. *See* 4/29/2026 Tr. at 101:22–24 [J. Antognini] (**Exhibit C**). *See also Boyd v. Hamm*, 2025 WL 2884410, at *21 n.44 (M.D. Ala. Oct. 9, 2025) (finding that the Mahdi execution in South Carolina had "little probative value" when plaintiff advanced the Utah protocol), *aff'd sub nom.*, *Boyd v. Comm'r, Ala. Dep't of Corr.*, 2025 WL 2970017 (11th Cir. Oct. 20, 2025), *cert. denied sub nom.*, *Boyd v. Hamm*, 146 S. Ct. 40 (2025);

Defendants' related contention that Dr. Williams contradicted himself is equally unavailing. Defendants insist that because Dr. Williams's report opined that "any caliber of rifle in the service rifle category would be accurate enough," he could not consistently testify that South Carolina's ammunition is materially different. *See* Appellants' Br. at 23. That argument conflates two distinct variables: the *caliber* of the rifle, which bears on accuracy, and the *construction* of the bullet, which bears on wounding capacity. Dr. Williams's report addressed the former—whether a service-category rifle is precise enough for a trained marksman to strike the cardiac bundle. His criticism of South Carolina on cross-examination during trial addressed the latter. As he explained, South Carolina "decided to use a frangible bullet or a bullet that's designed to disintegrate on impact, which means the bullet is not going to penetrate as deeply or as powerfully as a standard jacketed soft-point bullet such as is used by law enforcement and departments of corrections throughout the country." 4/28/2026 Tr. at 53:18–23 [J. Williams] (**Exhibit B**). Standard service-caliber rifles fire standard jacketed or soft-point ammunition—not frangible rounds. An opinion that any service-category caliber is *accurate enough* to hit the target therefore says nothing about, and is in no way inconsistent with, the separate opinion that South

---

*cf. Glossip*, 576 U.S. at 892–93 (rejecting the petitioners' argument that the alleged problems with an Arizona lethal injection execution demonstrated that Oklahoma's lethal injection protocol was "sure or very likely to cause serious pain").

Carolina's choice of *frangible* ammunition diminishes the penetration necessary to destroy the heart. There is no contradiction, and the district court committed no error—much less clear error—in crediting Dr. Williams's testimony that the two protocols are materially different.

### B. The District Court Did Not Clearly Err in Finding that Execution by Firing Squad Is Feasible and Readily Implemented

Mr. Lee established that execution by firing squad is feasible and readily implemented.

Former Commissioner Hamm and Deputy Commissioner Williams candidly admitted that if the Legislature authorizes firing squad, ADOC can carry it out.[7] Contrary to Defendants' suggestion, the evidence is far from equivocal. Commissioner Hamm testified without qualification that ADOC could procure lumbar, sandbags, armor steel plates, and bulletproof windows—the very materials that Dr. Williams opined would be appropriate to retrofit the execution chamber for execution by firing squad. *See* 4/27/2026 Tr. 229:12-22 [J. Hamm] (**Exhibit A**).

---

[7] Defendants' assertion that their own concessions are "untethered" from site-specific facts—Appellants' Br. at 30—makes no sense. Commissioner Hamm—who has personal familiarity with the execution chamber—served as the chief executive officer for ADOC during his tenure and had sole authority to approve or modify execution protocols. 4/27/2026 Tr. at 216:12-17; 238:4-6 (**Exhibit A**). There is no reason to believe he does not have the requisite information to answer these questions.

And he did not just testify that ADOC could "look into" modifying the space, *see* Appellants' Br. at 30, he agreed that ADOC could modify the space to carry out executions by firing squad full stop:

> Q: If firing squad executions became legal in the state of Alabama and a protocol was enacted, do you believe that you could modify space at Holman to carry out firing squad executions?
>
> A: We would certainly have to do our research to see what type of space we would need, ***and I'm sure we would be able to come up with an appropriate place***."
>
> Q: So is the answer to my question yes, that if the Legislature approved execution by firing squad and appropriated the funds, ADOC would be able to modify space at Holman to carry out executions by firing squad?
>
> A: ***Yes***.

4/27/2026 Tr. at 230:2-13 [J. Hamm] (**Exhibit A**).[8]

Defendants complain that the district court credited Dr. Williams's opinions that firing squad executions could be carried out at Holman Correctional Facility, even though he has "never set foot in Holman." Appellants' Br. at 27. But the district court did not rely solely on Dr. Williams's testimony. As explained above, the court also relied on the testimony of ADOC officials, including former Commissioner

---

[8] Defendants apparently concede—as they must—that they could procure the necessary rifles and ammunition. Appellants' Br. at 37 ("Appellants do not dispute that ADOC can procure guns, ammunitions, and building materials.").

Hamm, that "ADOC could modify space at Holman Correctional Facility to carry out executions by firing squad." DE 187 at 11 (citing testimony).

Nor does the fact that it would take some time for the Legislature to authorize and for ADOC to implement an execution by firing squad defeat Mr. Lee's claim. The Supreme Court's decision in *Nance v. Ward*, 597 U.S. 159 (2022), is instructive. There, a Georgia death-row inmate proposed execution by firing squad (which was not authorized in Georgia) as an alternative to lethal injection. *Id*. at 165–66. The Supreme Court held that an inmate is "not confined to proposing a method authorized by the executing State's law; he may instead ask for a method used in other States." *Id*. at 162–163. The Court went on to explain: "To be sure, amending a statute may require some more time and effort . . . . [But] Georgia has given us no reason to think that the amendment process would be a substantial impediment. The State has legislated changes to its execution method several times before. Other States have regularly done the same." *Id*. at 170 (citations omitted). The same is true here with Alabama. *See also Boyd*, 2025 WL 2884410, at *22 (rejecting Defendants' argument that firing squad is not readily implementable "merely because the State is not presently or immediately prepared to carry [it] out").

Finally, Defendants attempt to inject new facts into the record on appeal, asserting that at least one rifleman missed Mahdi's heart, and that, as a result, he remained conscious for approximately 30 to 60 seconds after being shot. *See*

15

Appellants' Br. at 24. Defendants cited no evidence for their assertion that Mahdi remained conscious for 30 to 60 seconds because there was no such evidence in the record.[9] This certainly cannot be a basis for any finding of clear error. In any event, whether true or not, Dr. Williams explained that there are material differences between the Utah protocol Mr. Lee advances and that of South Carolina: because the South Carolina protocol uses a lighter weight caliber bullet that is frangible, it will not penetrate "as deeply or as powerfully as a standard jacketed soft-pointed bullet such as is used by law enforcement or departments of correction throughout the country." *See* 4/28/2026 Tr. at 53:15–23 [J. Williams] (**Exhibit B**).[10]

---

[9] Dr. Antognini acknowledged that the Mahdi execution is not typical of firing squad executions, as Mahdi appeared to live a lot longer than what has been reported with other firing squad executions. *See* 4/29/2026 Tr. at 101:5–13 [J. Antognini] (**Exhibit C**); *see also* 4/28/2026 Tr. at 52:18–21 [J. Williams] (**Exhibit B**) (testifying that it is "virtually a hundred percent" that a trained marksman would hit the target at the specified distance). He did not, however, offer any opinion on how long Mr. Mahdi was actually conscious for.

[10] Defendants' focus on the different distances involved between the Utah and South Carolina protocols is puzzling. Appellants' Br. at 22. The district court's opinion contains no reference to the distance at all.

**C.** **The District Court Did Not Clearly Err in Finding that the State Has No Penological Interest in Refusing Mr. Lee's Proposed Alternative**

The district court correctly found that Defendants have no legitimate penological reason to refuse Mr. Lee's proposed alternative. The court explained that a State may refuse to adopt an inmate's proposed method of execution, for example, if the alternative is "untried and untested." DE 187 at 16 (citing *Bucklew*, 587 U.S. at 142); *see also Johnson v. Precythe*, 954 F.3d 1098, 1102 (8th Cir. 2020). But the district court found that "argument would have no purchase here, where the proposed alternative [*e.g.*, death by firing squad] has been in use for centuries." DE 187 at 16 (citing *Wilkerson v. Utah*, 99 U.S. 130 (1878)). The district court then expressly addressed Defendants' two proposed penological reasons for refusing to adopt Mr. Lee's alternative. *See id.* at 16–22.

***First***, the district court correctly rejected Defendants' concerns that ADOC would not be able to train and staff an execution team. *Id.* at 17–18. There are currently approximately 14,000 sworn officers with firearms training in the state of Alabama. DE 173-40 at 13 . A subset of those officers is *already* trained on 30 caliber rifles—DE 173-5 at 16 —and Defendants have repeatedly admitted that ADOC is capable of training its officers on such rifles. *See also* 4/27/2026 Tr. at 229:4–6 [J. Hamm]; 4/27/2026 Tr. at 257:14-17 [C. Williams] (**Exhibit A**).

17

But more to the point, the district court credited the testimony of Defendants' *own* witnesses—former Commissioner Hamm and current Deputy Commissioner Williams. DE 187 at 17. As the court explained, they "both testified that if firing squad were an approved method of execution, the ADOC would be able to train and staff an execution team capable of executing an inmate by firing squad." *Id.* (citing testimony). Specifically, Deputy Commissioner Williams testified:

> Q: [Y]ou would agree with me that if the State Legislature were to approve execution by firing squad, ADOC would be able to staff an execution team?
>
> A. Yes.

4/27/2026 Tr. at 257:23–258:1 [C. Williams] (**Exhibit A**).

> Similarly, former Commissioner Hamm testified:
>
> Q. And if the Alabama Legislature approved firing squad as a method of execution, would you be able to ensure that officers are trained appropriately in how to use that weapon?
>
> A. Whatever weapon was chosen, yes, we would make sure they were properly trained.

*Id*. at 229:7–11 [J. Hamm]. As such, Defendants' purported concerns about identifying members of an execution team are unsupported by the facts. DE 176 at 10 n.15 ("Dr. Williams testified to a reasonable degree of medical certainty that execution by firing squad . . . is feasible and readily implemented."); *see also Boyd*, 2025 WL 2884410, at *22 (firing squad is feasible and readily available).

***Second***, the district court considered ADOC's concerns that it does not "presently have a facility appropriate for carrying out firing squad executions." Appellants' Br. at 35. As explained above, the district court relied on the testimony of ADOC officials, including former Commissioner Hamm, to conclude that Defendants could modify or construct a space to accommodate execution by firing squad. *See supra* pp. 12–13.

## II. DEFENDANTS DO NOT SATISFY THE REQUIREMENTS FOR A STAY OF THE LOWER COURT'S JUDGMENT PENDING APPEAL.

Defendants do not satisfy any of the factors needed for a stay of the district court's judgment pending appeal.

***First***, Defendants cannot show that they are likely to succeed on Mr. Lee's Eighth Amendment claim. Defendants do not challenge the district court's factual findings on *Glossip*'s first prong. Nor do they challenge this Court's conclusion that, based on those findings, Mr. Lee has established that execution by nitrogen asphyxiation poses a substantial risk of serious harm. The only issue on this appeal is whether the district court clearly erred in some of her factual findings on *Glossip*'s second prong. But Defendants do not even argue that they presented some evidence that the district court failed to consider. Their argument is that the district court simply got it wrong. That is hardly the "strong showing" of substantial likelihood of success on appeal that Defendants need to warrant a stay. *See also* DE 194 ("[T]he State does little more than repeat the arguments it made previously. The Court

19

carefully considered each of these arguments and the entire record but ultimately concluded . . . that Lee met his burden to establish that the Protocol violates the Eighth Amendment.").

***Second***, Defendants have not shown that they will suffer irreparable harm absent a stay. The Court's injunction does not disturb Mr. Lee's conviction, invalidate his death sentence, or affect ADOC's ability to carry out his death sentence by other means. *See, e.g.*, DE 187 at 24–25; DE 194 at 3 (after "carefully consider[ing] the equities," denying Defendants' request to stay the judgment). And Defendants can still seek appellate review in this Court and, if necessary, the Supreme Court.

The only injury Defendants identify is the delay in carrying out Mr. Lee's execution on June 11–12 by nitrogen asphyxiation. *See* Appellants' Br. at 41. But Defendants should not have any interest in proceeding with an execution that a federal district court has found unconstitutional. And although the State and victims have an interest in the timely execution of lawfully imposed death sentences, *see Hill v. McDonough*, 547 U.S. 573, 584 (2006), that interest does not constitute irreparable harm. If Defendants ultimately prevail, the State can seek another execution date with the Alabama Supreme Court and carry out Mr. Lee's sentence at that time. *See also* DE 194 at 3 ("To the extent the State complains about the Court's 'eleventh hour' injunction, (doc. 193 at 6), it bears repeating that the State moved to

set Lee's execution during the pendency of this litigation, nearly six months after Lee first challenged the Protocol, thus requiring the Court to set Lee's case on an 'expedited schedule.'").

***Third***, Defendants are wrong that "death does not count as irreparable harm to Lee." Appellants' Br. at 42. It is plain that Mr. Lee will be harmed if a stay is issued: he will be executed under a method that a federal district court, after extensive fact-finding, has concluded violates the Eighth Amendment. After he is executed, this appeal will be moot. Thus, a stay of the injunction would permit Defendants to proceed with an unconstitutional execution without any appellate review. *See, e.g.*, *Nat'l Urb. League v. Ross*, 977 F.3d 698, 701 (9th Cir. 2020) (denying stay because doing so "risks rendering the plaintiff's challenge . . . effectively moot"). Defendants are entitled to appellate review; they are not entitled to carry out an execution before that review is complete.

***Fourth***, the public interest weighs against a stay. This case is the first trial— on a full evidentiary record—to address the constitutionality of nitrogen asphyxiation as a method of execution. This Court's decision will affect not only Mr. Lee's case, but also multiple pending challenges to Alabama's use of nitrogen asphyxiation. The public has a strong interest in making sure that Alabama's method of execution comports with the Constitution. *See G & V Lounge, Inc. v. Mich. Liquor Control Comm'n*, 23 F.3d 1071, 1079 (6th Cir. 1994) ("[I]t is always in the

public interest to prevent the violation of a party's constitutional rights." (citing *Gannett Co. v. DePasquale*, 443 U.S. 368, 383 (1979))).

The public also has an interest in preserving the integrity of federal judgments. Defendants had a full and fair opportunity to litigate this case. The district court heard the evidence, made credibility determinations, entered factual findings, and issued a final judgment for Mr. Lee. Defendants can and have appealed that final judgment. The only question is whether that review should proceed in the ordinary course or under the compressed timetable of an emergency execution appeal. Given the significance of the constitutional issues presented, the public interest favors ordinary appellate review. Because none of the *Nken* factors warrant a stay, this Court should deny Defendants' request.

Defendants raise several other arguments (dressed up as supposed public interest factors) that this Court should also reject. Defendants urge this Court to issue a stay of the judgment, because Mr. Lee elected to be executed by nitrogen hypoxia in 2018. Appellants' Br. at 42. This, Defendants argue, shows that Mr. Lee is "less interested in choosing a constitutional method of execution than he is in causing delay." *Id.* Defendants' argument ignores the fact that Mr. Lee elected nitrogen hypoxia years before ADOC adopted the Protocol challenged in this

litigation. Whatever Mr. Lee understood in 2018, he could not have known the details of a Protocol that did not yet exist.[11]

Nor is Mr. Lee required to propose an alternative, as Defendants appear to suggest, from the list of methods that the Legislature has authorized. *See* Appellants' Br. at 43. The Supreme Court has rejected that argument. *See Bucklew*, 587 U.S. at 139–40 ("An inmate seeking to identify an alternative method of execution is not limited to choosing among those presently authorized by a particular State's law."); *Nance* 597 U.S. at 164 ("The prisoner may, for example, 'point to a well-established protocol in another State as a potentially viable option.'" (quoting *Bucklew*, 587 U.S. at 140)). As the district court correctly explained, "[a]fter all, the Eighth Amendment is the supreme law of the land, and the comparative assessment it requires can't be controlled by the State's choice of which methods to authorize in its statutes." DE 187 at 10 (citation and quotation marks omitted).

The fact that Mr. Lee understands that gunshot wounds *may be* painful does not mean that execution by firing squad *is* painful. *See* Appellants' Br. at 44. Defendants asked if Mr. Lee had ever witnessed anyone getting shot and how they reacted. Defendants notably did ***not*** ask Mr. Lee where the victim was shot (in the

---

[11] When Mr. Lee elected nitrogen hypoxia, he "reserve[d] all rights." DE 1 ¶ 10. *See Wilson v. Hamm*, 2025 WL 794447, at \*6 (M.D. Ala. Mar. 12, 2025) (declining to apply equitable estoppel for this reason); *Grayson v. Hamm*, 2024 WL 4701875, at \*11–12 (M.D. Ala. Nov. 6, 2024) (same).

cardiac bundle or somewhere else), whether Mr. Lee confirmed with the victim that he or she was in pain, how many gunshot wounds did the victim suffer, whether the victim's "scream or moan" was because of pain or surprise, or when the victim screamed or moaned (immediately after being shot or hours later).  Where the bullets hit the body, how many bullets hit the body, and how long ago the bullets hit the body are central to Dr. Williams' opinion about the pain associated with execution by firing squad.

## CONCLUSION

For the reasons set forth above, the Court should affirm the district court's final judgment and injunction permanently enjoining Defendants from executing Mr. Lee by nitrogen asphyxiation.  The Court should also deny Defendants' motion to stay the judgment pending appeal.

Dated:  June 10, 2026

Respectfully submitted,

*/s/ Paige H. Sharpe*
Paige H. Sharpe
Anna K. Thompson
Kevin A. Cline
Jocelyn A. Wiesner
Alejandra C. Uria
ARNOLD & PORTER
  KAYE SCHOLER LLP
601 Massachusetts Ave. NW
Washington, DC 20001
paige.sharpe@arnoldporter.com
anna.thompson@arnoldporter.com

24

kevin.cline@arnoldporter.com
jocelyn.wiesner@arnoldporter.com
alejandra.uria@arnoldporter.com
T: (202) 942-5000
F: (202) 942-5999

*Counsel for Plaintiff-Appellee Jeffery Lee*

# CERTIFICATE OF COMPLIANCE

1.      This brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4, this brief contains 5,868 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word for Microsoft 365 in Times New Roman 14-point font.

Dated: June 10, 2026

*/s/ Paige H. Sharpe*
Paige H. Sharpe

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on June 10, 2026, a true copy of the foregoing brief has been filed electronically using the Court's CM/ECF system. All parties are represented by registered CM/ECF users and will be served by the appellate CM/ECF system.

*/s/ Paige H. Sharpe*
Paige H. Sharpe